899 P.2d 393

Donna L. MAGUIRE and Robert L. Maguire, Plaintiffs–Appellants,

v.

HILTON HOTELS CORPORATION, a California corporation, and Prudential Insurance Company of America, a Delaware corporation, Defendants–Appellees,

and

John Does 1–10, Jane Does 1–10, and Doe Entities 1–10, Defendants.

No. 17544.

Supreme Court of Hawaiʻi.

June 26, 1995.

Leslie S. Fukumoto, on the briefs, Tanaka & Fukumoto, Honolulu, for plaintiffs-appellants.

Nicole B. Jeffers (Robert P. Richards with her on the briefs, Reid, Richards & Miyagi), Honolulu, for defendants-appellees.

Before MOON, C.J., LEVINSON and RAMIL, JJ., CHANG Circuit Judge, in Place of KLEIN, J., Recused, and KOCHI, Circuit Judge, in Place of NAKAYAMA, J., Recused.

RAMIL, Justice.

Plaintiff-appellant Donna L. Maguire (Donna) was assaulted while cleaning the men's restroom at the Hilton Hawaiian Village (the Hilton or the hotel) in Honolulu. Donna was an employee of Hawai'i Care & Cleaning (HCC), which had entered into an agreement with the hotel to provide cleaning services at the Hilton. As a result of the assault, Donna and her husband, plaintiff-appellant Robert L. Maguire (Robert) (collectively Plaintiffs), filed a complaint against Defendants–Appellees Hilton Hotels Corporation and Prudential Insurance Company of America (collectively Defendants), as owners of the Hilton. In their complaint, Plaintiffs alleged that Defendants had breached their duty to Donna.

The circuit court awarded summary judgment in favor of Defendants because it concluded, as a matter of law, that Defendants did not owe a duty to Donna. Because we hold that: (1) Donna was a business visitor of the Hilton; and (2) there are genuine issues of material fact regarding the issue of reasonable foreseeability, we vacate the order awarding summary judgment in favor of Defendants and remand for further proceedings.

## I. FACTS

On July 1, 1986, the Hilton entered into a two-year contract with HCC whereby HCC agreed to provide cleaning services at the Hilton. Donna was employed by HCC and assigned to the Hilton. Pursuant to the agreement, certain areas of the hotel were to be cleaned at specific times. For example, the men's restroom on the ground floor of the hotel's Tapa Tower was to be cleaned by HCC employees daily between 11:00 p.m. and 7:00 a.m. unless otherwise advised by the hotel.

On March 27, 1988, while working her normal shift at the hotel, Donna was sexually assaulted by an unknown assailant in the Tapa Tower men's restroom.[1] Plaintiffs thereafter filed a complaint against Defendants alleging, *inter alia*, that: (1) Defendants knew or should have known that requiring Donna's services late at night in a high crime area where other attacks had occurred put her at risk; (2) Defendants' failure to exercise ordinary care was a legal cause of her physical, emotional, and economic injuries; and (3) Robert suffered loss of consortium.

Defendants filed a motion for summary judgment on April 5, 1989. The circuit court granted and denied the motion in part. The court ruled, *inter alia*, that Donna was not: (1) a guest of the Hilton, and, therefore, there was no special "guest-innkeeper" relationship between them; and (2) an employee of the hotel as defined in Hawai'i Revised Statutes (HRS) chapter 386. The court allowed Donna and Robert an additional sixty days from the date of the order to conduct further discovery as to the existence of another "special relationship" that would give rise to a duty on the part of the hotel to protect Donna against criminal acts by third parties.

---

1. At approximately 1:15 a.m., Donna was cleaning the men's restroom on the ground level of the Hilton Tapa Tower. She had placed a "no entry" sign outside, closed the door, and was alone in the restroom cleaning the stalls. An unknown male assaulted Donna by fondling her and threatening to use a knife, which she did not see. Because of the assailant's extremely intoxicated condition, Donna managed to push him away and escape.

On August 7, 1989, Defendants filed a second motion for summary judgment and argued that no special relationship existed between the hotel and either the unknown assailant or Donna. The circuit court denied Defendants' motion on the basis that Plaintiffs had a pending motion to compel discovery. However, the circuit court eventually denied Plaintiffs' motion to compel. Thus, on March 2, 1990, Defendants filed a third motion for summary judgment on all counts. Defendants again argued that the hotel did not have a "special relationship" with Donna.

Plaintiffs filed a memorandum in opposition, as well as a supplemental exhibit, which consisted of incident reports from the hotel's security department documenting alleged criminal acts that had occurred on the premises prior to March 27, 1988. The reports included: (1) a March 11, 1988, domestic dispute between non-guests; (2) an armed robbery in a guest room of the hotel's Tapa Tower on March 20, 1988, at 8:30 p.m.; (3) a beating and robbery in the hotel parking lot on April 4, 1984, at 9:30 p.m.; (4) a robbery and assault in the hotel's Rainbow Tower on August 22, 1984, at 8:00 p.m.; (5) a terroristic threatening in a hotel hallway on April 8, 1984, at 8:15 a.m.; and (6) an armed robbery in the Hilton parking lot on March 30, 1984 at 10:25 p.m.[2]

The circuit court granted Defendants' motion for summary judgment on September 10, 1990, concluding, on the record before it, that Defendants owed no duty to Donna. Plaintiffs timely appealed.

## II. *STANDARD OF REVIEW*

■ The issue in this case is whether the circuit court erred when it granted summary judgment in favor of Defendants on the basis that Defendants owed no duty to Plaintiffs. We review the circuit court's award of summary judgment *de novo* under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsidera-*

*tion denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). As we have often articulated,

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law.

*Id.* (emphasis added) (citation and internal quotation marks omitted); *see* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted).

■ Thus, in order to affirm the lower court, we must determine: (1) that there are no disputed facts in this case that, if proved, would have the effect of "establishing or refuting" the existence of a duty owed by Defendants to Plaintiffs; and (2) that Defendants are entitled to judgment as a matter of law. *See Cuba v. Fernandez*, 71 Haw. 627, 631, 801 P.2d 1208, 1211 (1990). In making these determinations, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the Plaintiffs. *See Bidar v. AMFAC, Inc.*, 66 Haw. 547, 551, 553, 669 P.2d 154, 159 (1983) ("[O]ur review of [summary] judgments has been governed by the rule that the 'evidence and the inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion.' ").[3]

## III. *DISCUSSION*

■ "A prerequisite to any negligence action is the existence of a duty owed by the defendant to the plaintiff." *Cuba*, 71 Haw. 627, 631, 801 P.2d 1208, 1211 (citing *Knodle v. Waikiki Gateway Hotel, Inc.*, 69 Haw. 376,

---

**2.** Plaintiffs also attached reports from two additional incidents. These incidents, however, occurred after Donna was assaulted on March 27, 1988.

**3.** In addition, we recognize that " '[i]ssues of negligence are ordinarily not susceptible of sum-

mary adjudication' by the court." *Bidar v. AMFAC, Inc.*, 66 Haw. at 553, 669 P.2d at 159 (quoting *Pickering v. State*, 57 Haw. 405, 407, 557 P.2d 125, 127 (1976)).

385, 742 P.2d 377, 383 (1987)). Generally, courts have been reluctant to impose a duty on owners and occupiers of land to protect others against the criminal acts of third parties. *Doe v. Grosvenor Properties (Hawaii) Ltd.*, 73 Haw. 158, 162, 829 P.2d 512, 515 (1992) (citations omitted). This reluctance stems from the view that "criminal acts are not reasonably to be expected, and are so unlikely in any particular instance that the burden of taking continual precautions against them almost always exceeds the apparent risk." *Id.* (citing W.P. Keeton, *Prosser & Keeton on Torts* § 33 (5th ed. 1984)). Nevertheless, exceptions to the general rule that there is no duty to protect another against the criminal acts of a third party may arise, when justified by the existence of some "special relationship" between the parties. *Doe*, 73 Haw. at 163, 829 P.2d at 515 (citing *Restatement (Second) of Torts* § 315 (1965)).

In determining whether such a relationship exists, this court looks to section 314A of the Restatement (Second) of Torts, which sets forth a non-exclusive list of "special relationships" upon which a court may find a duty to protect. *See, e.g., Doe*, 73 Haw. at 163, 829 P.2d at 515; *Cuba*, 71 Haw. at 632, 801 P.2d at 1211; *Knodle*, 69 Haw. at 386–87, 742 P.2d at 384. Section 314A provides:

(1) A common carrier is under a duty to its passengers to take reasonable action

   (a) to protect them against unreasonable risk of physical harm, and

   (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An innkeeper is under a similar duty to his [or her] guests.

(3) *A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.*

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his [or her] normal opportunities for protection is under a similar duty to the other.

(Emphasis added.) The "special relationship" set forth in section 314A(3), *i.e.*, the "invitee exception," is further explained by the *Restatement (Second) of Torts* § 332 as follows:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

In *Doe, supra,* we declined to adopt the broader "public invitee" relationship as explained by § 332(2), "finding that there is no basis upon which to base a duty to protect where a landholder holds open his [or her] land gratuitously, and does not receive or hope to receive monetary, commercial, or other tangible benefit from the invitation." *Doe*, 73 Haw. at 164, 829 P.2d at 516 (citation omitted).[4] However, we expressly recognized the "business visitor" relationship as defined by section 332(3) as an exception to the general rule that a defendant owes no duty to protect a plaintiff from the criminal acts of third parties. The theory reflected in the "business visitor" relationship, as delineated in section 332(3) is that "a landholder's duty of affirmative care, including the duty to protect, is imposed as the price the landholder must pay for the economic benefit derived from visitors." *Id.* at 164 n. 1, 829 P.2d at 516 n. 1 (citations omitted).

■ While we expressly recognized the business invitee relationship in *Doe*, we also acknowledged that because

the possessor [of land] is not an insurer of the visitor's safety, he [or she] is ordinarily under no duty to exercise any care until he [or she] knows or has reason to know that

---

4. Declining to adopt the public invitee relationship as an exception to the general rule that a defendant has no duty to protect against criminal actions by third parties was consistent with

*Wolsk v. State*, 68 Haw. 299, 711 P.2d 1300 (1986), in which we held that the State had no duty to protect persons who were assaulted while camping in a State park.

the acts of the third person are occurring, or about to occur. [The possessor] may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he [or she] has no reason to expect it on the part of any particular individual. If the place or character of [the possessor's] business, or his [or her] past experience is such that he [or she] should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, [the possessor] may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford reasonable protection.

*Id.* at 165–66, 829 P.2d at 516 (quoting Comment f to § 344 of the Restatement (Second) of Torts). Therefore, under the business visitor relationship exception, a landholder only has a duty to protect against criminal acts of third persons if such acts are reasonably foreseeable.

The relevant facts of *Doe, see* 73 Haw. at 160–61, 829 P.2d at 514, were as follows: The plaintiff, Jane Doe, was a legal secretary working in the Dillingham Transportation Building (Dillingham). On September 9, 1987, during her lunch hour, Doe entered an elevator in the lobby of Dillingham. At the same time, an unknown male also entered the elevator. The elevator stalled between the first and second floors, whereupon the man took out a knife, robbed, and sexually assaulted Doe. The man then pressed a button on the control panel and after the elevator opened on the second floor, he exited, escaping down a stairwell. Dillingham is an office building open to the public. The building and the elevators were owned and managed by the defendants—Grosvenor Properties, Ltd. and Grosvenor International, Ltd. (Grosvenor). Doe brought an action against Grosvenor, claiming that it had negligently failed to protect her from being assaulted in its elevator. Grosvenor moved for

summary judgment arguing it had no duty to protect the plaintiff from the criminal acts of third parties. The circuit court agreed and granted Grosvenor's motion. Doe appealed.

On appeal, we affirmed the decision of the circuit court. We initially held that a landlord-tenant relationship existed between Grosvenor and Doe; however, because, *inter alia*, "the landlord-tenant relationship is not a 'special relationship' in this jurisdiction," *id.* at 166, 829 P.2d at 517 (citing *Cuba v. Fernandez*, 71 Haw. at 634 n. 4, 801 P.2d at 1212 n. 4), we found no duty to protect on that basis.[5] We then held that, under the facts of the case, Doe could be classified as a "business invitee" under section 314A(3) because:

[t]he business of the owner of the building was operation of an office building, the common areas of which were held open to the public, and were essential parts of that business as they provided access to the offices of building tenants. Therefore, plaintiff, who was assaulted while returning to the office in which she was employed, was in the building elevator for a purpose connected with the business of the building's owner and could be classified as a business invitee under § 314A(3).

*Doe*, at 168, 829 P.2d at 517 (citations omitted). Although we concluded that the plaintiff could be classified as a business invitee of Grosvenor, we nevertheless held that there was an insufficient basis to find a duty to protect her. We reached this holding because, under the facts of the case, it was undisputed that prior to the assault, Grosvenor:

had received *no complaints* concerning the security of the building elevators, had *no reports* of any violent crimes on the premises or of suspicious individuals in the common areas of the building, and there was *no evidence* that in going about its business of managing the office building, [Grosvenor] unreasonably failed to discover and protect against the assault.

---

5. We also concluded that the landlord-tenant relationship generally does not fall within the terms of § 314A(3) because a tenant has the right of possession and is not on the premises for a purpose connected with the business dealings of the landowner. *Id.* at 166, 829 P.2d at 516–17 (citations omitted).

*Id.* at 168, 829 P.2d at 518 (emphasis added and citation omitted). Thus, because there were no material facts in dispute that could demonstrate that the assault by the unknown man in the elevator was reasonably foreseeable, we affirmed the circuit court's award of summary judgment in favor of Grosvenor.

Accordingly, pursuant to *Doe, supra,* we must first determine whether there was a "special relationship" between Donna and the Hilton that might give rise to a duty to protect against the criminal actions of third parties. In making this determination, we look to § 314A of the Restatement (Second) of Torts for guidance. If such a relationship exists, we must then determine whether the actions of the unknown assailant were reasonably foreseeable to the Hilton.

### A.

■ Like the plaintiff in *Doe,* Plaintiffs in the instant case argue that there was a special relationship between Donna and the hotel pursuant to the *Restatement (Second) of Torts* § 314A(3), which provides that a possessor of land has a duty to protect members of the public who enter its land in response to the possessor's invitation. Thus, Plaintiffs are not asking us to expand the list of special relationships, but rather to conclude that Donna was a business visitor of the Hilton. As discussed *supra,* if Donna was "invited to enter or remain" on the Hilton's premises "for a purpose directly or indirectly connected with business dealings" of the hotel, Donna would be a business visitor of the Hilton. *See Restatement (Second) of Torts* § 332(3).

Initially, Defendants contend that Donna "was not *invited* to enter the premises by Hilton." (Emphasis added.) We disagree. An "invitation" is distinguished from "permission" by the *Restatement (Second) of Torts* § 332, comment b, which provides that

"an invitation is conduct which justifies others in believing that the *possessor desires* them to enter the land; [whereas,] permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so." (Emphases added.)

Pointing to section 332, comment b, to support their contention, Defendants claim that "no evidence of words or conduct existed showing a *desire* by Hilton that [Donna] enter the premises." (Emphasis added.) At most, Defendants claim, Donna "was allowed to enter for her own purposes." While it is true that the Hilton did not specifically invite Donna to enter its premises, it did, by contract, invite employees of HCC to enter for the purpose of cleaning the hotel. It is therefore unreasonable for Hilton now to claim it was simply "allowing" Donna to enter the hotel for her own purposes. Accordingly, because the hotel entered into a contract that required HCC's employees to enter its premises, we hold that the Hilton invited her to enter the hotel.

Alternatively, the Hilton argues that, even if Donna has met the "threshold invitation showing," her presence did not provide a direct or indirect benefit to the business dealings of the hotel and, therefore, she was not a business visitor. We disagree. It is difficult to comprehend how Donna's cleaning services could provide anything but a *direct* benefit to the Hilton's business of providing rooms and services to its guests. We therefore hold that, because Donna was invited to enter the Hilton's premises to provide services that directly benefited the business dealings of the hotel, she was a business visitor of the hotel.[6] As such, a "special relationship" existed between Donna and the Hilton.

---

**6.** The fact that Donna was an employee of an independent contractor, *i.e.,* HCC, and not an employee of the Hilton does not alter our holding. *See O'Leary v. James & Wunderlich,* 192 F.Supp. 462, 469 (D.Mont.1960), *aff'd,* 288 F.2d 462, (9th Cir.1961) (whether a plaintiff is an independent contractor or an employee, he or she is nevertheless a business visitor); *Robertson v. Sixpence Inns of America, Inc.,* 163 Ariz. 539, 544, 789 P.2d 1040, 1045 (1990) ("[g]enerally, an independent contractor and the contractor's em- ployees are included in the category of business invitees for the purpose of determining the duty owed by the contractee"); *Texas Power & Light Co. v. Holder,* 385 S.W.2d 873, 886 (Tex.Civ.App. 1965), *reh'g denied,* 393 S.W.2d 821 (Tex.1965) ("[a] servant or employee of another person who enters the premises on the business of his [or her] master, in which business the master and the owner or occupant have a mutual interest occupies the status of an invitee").

### B.

■ Once the existence of a special relationship is established, the determination of whether there is a duty turns upon whether the actions of the third party are reasonably foreseeable. *See Doe*, 73 Haw. at 168, 829 P.2d at 518. As we have noted, we held in *Doe* that, although a special relationship existed between the plaintiff and the defendant, *i.e.*, a "business visitor" relationship, the defendant owed no duty as a matter of law because: (1) there was no evidence on the record to support a finding of foreseeability; and (2) the plaintiff failed to demonstrate any genuine issues of material fact with respect to the foreseeability issue. *Id.*

In the instant case, however, Plaintiffs adduced evidence of six incident reports prepared by the Hilton's security department. The six incidents included: (1) a terroristic threatening; (2) four robberies; and (3) a domestic dispute. One of the robberies, an armed robbery of a guest, occurred in the Tapa Tower on March 20, 1988. On March 27, 1988, Donna was cleaning the men's restroom on the ground level of the Tapa Tower when she was assaulted by the unknown assailant. Defendants contend that, "based on the facts presented to the trial court, no reasonable person could conclude that the attack was foreseeable[.]" We disagree.

■ Viewing these facts in the light most favorable to Plaintiffs, *see Bidar*, 66 Haw. at 553, 669 P.2d at 159, we hold that reasonable minds could clearly differ on the question of foreseeability. Although the prior criminal incidents that took place at the Hilton give rise to our holding, we do not imply that plaintiffs are always *required* to demonstrate the existence of some prior similar criminal acts in order to show that the criminal act of a third party was reasonably foreseeable. Indeed, when determining the foreseeability of a particular criminal act committed by a third party, we look to the totality of circumstances. *See Doe v. Grosvenor Properties (Hawaii) Ltd.*, 73 Haw. 158, 829 P.2d 512 (1992); *see also Moody v. Cawdrey & Associates, Inc.*, 6 Haw.App. 355, 721 P.2d 708, *rev'd*, 68 Haw. 527, 721 P.2d 707 (1986).

In *Moody*, the Intermediate Court of Appeals (ICA) was faced with the issue of whether a landlord was liable to tenants for third party criminal acts. The ICA held that because landlords are in a "special relationship" with their tenants, landlords are liable for the foreseeable criminal acts of third parties. The ICA then discussed the issue of foreseeability in the context of third party criminal acts:

> We find no logic in [the prior similar incidents rule] which allows an occupier of land one free assault before liability may be imposed. Evidence of prior similar incidents is not the *sine qua non* to a finding of foreseeability. While proof of prior similar incidents is probative of foreseeability, such proof is not the prerequisite, and its absence does not foreclose a finding of foreseeability. Rather, the touchstone of liability is foreseeability of criminal attack based on "the totality of the circumstances." Foreseeability must be analyzed in light of all the circumstances on a case by case approach.

*Moody*, 6 Haw.App. at 364–365, 721 P.2d at 715 (internal citations omitted).

Although this court subsequently reversed the ICA's decision in *Moody* based on a determination that no "special relationship" exists between landlords and tenants, the ICA's discussion regarding foreseeability remains compelling. In fact, we followed the *Moody* court's logic in *Doe v. Grosvenor, supra*, in which we examined the totality of circumstances in lieu of relying solely on the prior similar incidents test. *See Doe*, 73 Haw. at 168, 829 P.2d at 517, quoted *supra* at ——, 899 P.2d at 397.[7]

---

7. We note that many other jurisdictions also apply the totality of circumstances test in determining foreseeability in the context of third party criminal acts. *See, e.g., Hickman v. Warehouse Beer Sys., Inc.*, 86 Ohio App.3d 271, 620 N.E.2d 949, 953 (1993) ("We believe the 'totality of the circumstances' to be a better indicator to establish knowledge of a defendant than focusing in on any particular criminal occurrences."); *Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 301, 796 P.2d 506, 510 ("Reduced to its essence, the 'prior similar incidents' requirement translates into the familiar but fallacious saying in negligence law that every dog gets one free bite before its owner can be held to be negligent for failing to control

Under the totality of circumstances test, prior criminal acts are still helpful, but the inquiry is broad enough to examine other factors as well. *See Whittaker v. Saraceno,* 418 Mass. 196, 199, 635 N.E.2d 1185, 1188 (1994) ("The previous occurrence of similar criminal acts on or near a defendant's premises is a circumstance to consider, but the foreseeability question is not conclusively answered in favor of a defendant landlord if there has been no prior similar criminal act."); *Holiday Inns, Inc. v. Shelburne,* 576 So.2d 322, 331 (Fla.App.1991) ("Foreseeability is determined in light of all the circumstances rather than by a rigid application of a mechanical 'prior similar [incidents]' rule. While evidence of prior similar incidents are helpful, a rule limiting evidence of foreseeability to prior similar incidents deprives the jury of its role in determining the question of foreseeability.") (citations omitted).

Applying the totality of the circumstances test does not mean that we are imposing strict liability on landowners to protect invitees against all actions by third parties. To the contrary, the totality of the circumstances rule simply means that our inquiry will not be unfairly limited. Foreseeability must still be determined reasonably. As the Mississippi Supreme Court has aptly noted:

> We doubt there exists a community in this State which is entirely crime-free. In the broadest sense, all crimes anywhere are "foreseeable." To impose a blanket duty on all merchants to afford protection to their patrons would be a result not intended by our courts and not condoned by public policy. Discharging such a duty would undoubtedly be inconvenient and expensive, and to impose a duty absent true foreseeability of criminal activity in a particular store would be grossly unfair.

*Crain v. Cleveland Lodge 1532,* 641 So.2d 1186, 1191 (Miss.1994) (quoting *Sawyer v. Carter,* 71 N.C.App. 556, 322 S.E.2d 813, 817 (1984)).[8]

This is not, however, a question for us to decide in the instant case. Indeed, the issue of reasonable foreseeability is ordinarily subject to a determination by the trier of fact.[9] *See Delos Reyes v. Kuboyama,* 76 Hawai'i 137, 146, 870 P.2d 1281, 1290 (1994) (the statutory duty not to sell or furnish liquor to minors includes the situation where an innocent third person was injured by an intoxicated minor other than the minor to whom the liquor was sold, subject to a determination by the trier of fact on the question of foreseeability). Therefore, because there was a genuine issue of material fact regarding the question of foreseeability, we vacate the order granting summary judgment in favor of Defendants.[10]

the dog.... There is no 'one free rape' rule in Idaho.").

**8.** *See also Whittaker,* 418 Mass. at 200, 635 N.E.2d at 1188–89 ("The possibility of criminal conduct occurring is present in almost every aspect of daily life.... However, society should not place the burden ... on the owner of the property ... without proof that the owner knew[.]"); *Sturgeon v. Curnutt,* 29 Cal.App.4th 301, 34 Cal.Rptr.2d 498, 501–02 (1994) ("On a clear day, you can foresee forever.... [H]owever, the courts cloud the view to bring imposition of duty in line with practical conduct.").

**9.** We note that foreseeability is only a question of law when reasonable minds cannot differ. *See Moody,* 6 Haw.App. at 366, 721 P.2d at 716 ("Foreseeability may be decided as a question of law only if, under the undisputed facts there is no room for a reasonable difference of opinion.") (internal quotations and citation omitted).

We also note that, at trial, each of the prior criminal incidents that took place at the Hilton are still potentially subject to admissibility determinations by the presiding judge outside the presence of the jury. And these determinations are within the discretion of the trial court. *See Kaeo v. Davis,* 68 Haw. 447, 456, 719 P.2d 387, 393 (1986) ("[T]he admission of evidence of prior similar [automobile] accidents is ... within the discretion of a trial court."). For example, "[e]vidence, of course, 'may be excluded if the danger of unfair prejudice, confusion of the issues or the consideration of undue consumption of time is disproportionate to [its] value.'" *Id.* at 456, 719 P.2d at 393 (1986) (citing Haw.R.Evid. 403). Although *Kaeo* involved the admissibility of prior similar automobile accidents, evidence of prior similar criminal acts for the purpose of determining foreseeability is likewise subject to an HRE 403 determination.

**10.** Plaintiffs also argue, *inter alia,* that even though Donna "was an employee of an independent contractor, Hawai['ji case law establishes that [Defendants] owed her a duty pursuant to Chapter 396 of the Hawai['ji Revised Statutes. We disagree. While we have held that HRS chapter 396, which generally requires employers to provide employees with a safe place of em-

## IV. CONCLUSION

In conclusion, we hold that because: (1) Donna was a business visitor of the Hilton; and (2) there was a genuine issue of material fact regarding the issue of reasonable foreseeability, the circuit court erred in granting Defendants' motion for summary judgment. We therefore vacate the order granting summary judgment in favor of Defendants, as well as the final judgment and remand for further proceedings consistent with this opinion.

ployment, may apply to employees of independent contractors, *see Michel v. Valdastri, Ltd.,* 59 Haw. 53, 575 P.2d 1299 (1978), we have never held that it automatically imposes upon employers an affirmative duty to protect employees against the criminal acts of third parties.

To the extent that Plaintiffs assert any additional arguments for the proposition that the Hotel "automatically" owed Donna a duty to protect her against the criminal acts of third parties, we deem them to be without merit.