92 P.3d 477

**Violet Leong KAU, Helen Gau Ngee Leong Lam, Jeremy Mun Shan Lam, individually and as Trustee under Declaration and Agreement of Trust dated June 29, 1981, executed by Julie Lynn Lam as Settlor, Sherry Mei Lin Chun, individually and as Trustee under Declaration and Agreement of Trust dated June 29, 1981, executed by Gilbert Kwai Leong Chun as Settlor, Caroline Yee Ingersoll, individually and as Trustee under Declaration and Agreement of Trust dated May 8, 1981, executed by Richard King Ingersoll as Settlor, Jacqueline Yee Reber, individually and as Trustee under Declaration and Agreement of Trust dated May 8, 1981, executed by David James Reber as Settlor, Gwendolyn Yee Coolidge, individually and as Trustee under Declaration and Agreement of Trust dated May 5, 1981, executed by Charles Johnson Coolidge as Settlor, and Eleanor L.O. Park, as Trustee under that certain Diane Joan Bishop Irrevocable Trust Agreement, dated October 2, 1991, that certain James Sung Nin Leong Irrevocable Trust Agreement, dated October 2, 1991, that certain Robert Sung Wah Leong Irrevocable Trust Agreement, dated October 2, 1991, and that certain David Sung Mun Leong Irrevocable Trust Agreement, dated October 2, 1991, Petitioners/Plaintiffs–Appellants,**

**v.**

**CITY AND COUNTY OF HONOLULU, Rodney E. Gardiner, Marilyn J. Gardiner, Henry A. Zuberano, Trustee, Ruth Ellen Onasch, Trustee, Patricia Ann Miller, Trustee, George W. Trendle, Corrine R. Trendle, Betsy Hammes, Linda E. Bolton, A. William Barlow, Trustee,**

Roberta Hale Barlow, Trustee, George E. Cramp, Trustee, Eleanor D. Cramp, Trustee, Landis V. Haugen, Jacinta L.L. Yu, Garrett Saikley, William Ganslen, Madelyn Ganslen, Respondents/Defendants–Appellees,

and

John Does 1–50, Jane Does 1–50, Doe Corporations 1–50, Doe Partnerships 1–50, and Doe Entities 1–50, Defendants.

No. 23674.

Supreme Court of Hawai'i.

June 22, 2004.

Richard K. Ingersoll, Simon Klevansky, and Robert J. Faris (Gelber, Gelber, Ingersoll, Klevansky & Faris), Honolulu, on the briefs, for petitioners/plaintiffs-appellants Fee Owners.

David A. Nakashima, Isaac H. Moriwake, and Lerisa L. Heroldt (Alston Hunt Floyd & Ing), Honolulu, on the briefs, for respondents/defendants-appellees Lessees.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ., and Circuit Judge WILSON, in Place of ACOBA, J., Recused.

Opinion of the Court by DUFFY, J.

Petitioners/plaintiffs-appellants Violet Leong Kau, et al. [hereinafter, Fee Owners], applied for a writ of certiorari to review the published opinion of the Intermediate Court of Appeals (ICA) in *Kau v. City and County of Honolulu,* 104 Hawai'i 490, 92 P.3d 1000, 2001 WL 1205618 (App.2001) [hereinafter, the ICA's opinion or *Kau I* ]. Based on the

following, we affirm in part and reverse in part the ICA's opinion.

In 1994, Rodney E. Gardiner, et al. [hereinafter, Lessees] submitted applications to the City and County of Honolulu (City), requesting the initiation of condemnation proceedings under Revised Ordinances of Honolulu (ROH) chapter 38 (ROH chapter 38 or the Ordinance). *Kau I*, at 495–96, 92 P.3d at 1005–06 The City and County of Honolulu Department of Community Services (DCS), charged with administering the leasehold condominium process under ROH chapter 38 (ROH § 38–1.8), held a public hearing to determine whether the acquisition of the leased fee interests, using the City's power of eminent domain, would effectuate the public purpose of ROH chapter 38 as stated by the City Council in its enactment. Following the hearing, the DCS found that the public purpose of ROH chapter 38 would be effectuated by this condemnation. The Fee Owners subsequently filed the present action seeking declaratory relief to stop the condemnation proceedings.

## I. *BACKGROUND*

Neither party disputes the substantive facts [1] in *Kau I*, so this court adopts the facts laid out in the ICA opinion.

The real property relevant to this dispute is a 15,957 [2] square foot parcel of land at 3003 Kalakaua Avenue, Honolulu, Hawaii [sic] (the Land). Prior to 1958, Mrs. Chang Tai Leong (Mrs. Leong) owned and lived in a residence on the Land. The [Fee Owners] are Mrs. Leong's descendants (or trustees of trusts established for the benefit of her descendants).

In 1958, Mrs. Leong's family executed a lease of the Land (Master Lease) to Kapiolani Park Land Company, Ltd. [KPL]. The term of the Master Lease was fifty-five years from April 1, 1959, to midnight on March 31, 2014.

[KPL] constructed a building on the Land and organized it as a cooperative apartment project.

. . . .

In 1964, [KPL] requested an amendment to the Master Lease to facilitate [KPL]'s submission of its leasehold interest to a CPR.[3] Consent was given and an Amendment of Lease [ ] was executed on July 6, 1964, and states, in relevant part, as follows:

WHEREAS, the [Fee Owners] and [KPL] desire to submit the land described in said Lease and the apartment building constructed upon said land to the [CPR] established by Act 180, Session Laws Hawaii 1961, as amended, so as to convert said property into a condominium apartment project[ ] . . . [.]

. . . .

NOW, THEREFORE, IT IS MUTUALLY AGREED by and between the [Fee Owners] and [KPL] that said Lease . . . be and the same is hereby amended as follows:

(a) by adding the following paragraph . . .:

5. *[CPR]*. The demised premises are hereby submitted to the [CPR] established by Act 180, Session Laws of Hawaii 1961, as amended, and shall during the whole of said term unless and until waived or otherwise terminated as provided by law, constitute and be established as a[CPR] known as 3003 KALAKAUA, consisting of a leasehold interest in the demised land, the building thereon, and the common elements thereof as described in the document entitled "Declaration of [CPR]", attached hereto and made a part hereof.

---

1. The Fee Owners object to two facts which are not germane to the issues presented in this case: the number of apartments and the total square footage of the land. *See* notes 2 and 4, *infra.*

2. The Fee Owners argue that the land is 16,957 square feet, not 15,957 square feet.

3. Condominium Property Regime. While Act 180, 1961 Session Laws of Hawai'i (Haw.Sess.

L.), as amended, originally referred to condominiums as "horizontal property regimes," in 1988 the legislature changed the language to "condominium property regimes" (CPR). 1988 Haw. Sess.L. Act 65 § 2. To avoid any confusion, we will use the term "CPR" as referring to both horizontal property regimes and condominium property regimes.

(Emphasis in original.) This document initially states that "the land described in said Lease and the apartment building constructed upon said land" would be submitted to a[CPR]. However, it subsequently states that only "[t]he demised premises are hereby submitted to the [CPR] ... [ ] and shall during the whole of said term ... [ ] constitute and be established as a[CPR] known as 3003 KALAKAUA, consisting of a leasehold interest in the demised land, the building thereon, and the common elements thereof[.]" (Emphasis in original.)

Similarly, the Declaration of [CPR] submits only the leasehold interest to the [CPR] as follows:

> NOW, THEREFORE, [KPL] does hereby express its desire that its leasehold interest in said land and said building thereon shall be submitted to the [CPR] established by Act 180 Session Laws of Hawaii 1961, as amended, and does hereby establish a [CPR] with respect to its leasehold interest in said land and said building thereon. . . .

The [Lessees] state that

> [f]ollowing the creation of the CPR, the Developer sold each of the condominium units which comprise the building constructed at 3003 Kalakaua, together with an assignment of a 1/25 leasehold interest in 3003 Kalakaua under the Master Lease to various individuals. Lessees own 13 of the 25 condominium units located at 3003 Kalakaua and are the assignees of 13/25 of the Developer's leasehold interest under the Master Lease.

(Footnote and record citations omitted.)

The [Lessees] state that there are "25 condominium units." According to our calculations, there are 24 residential condominium units (2 apartments on each of 12 floors = 24 apartments and 23 × 4/95 + 3/95 = 95/95).[4] The [Lessees] own 13 of the 24 residential condominium units. The remaining 11 residential condominium units are owned by others. . . .

Hawai'i Revised Statutes § 514A–20 (1993)[,] ... effective May 24, 1975, [provided that] ... [a CPR] could not be established for a parcel of land absent submission of the fee of the land to the [CPR].

. . . .

In 1991, the City Council passed Bill No. 156 as Ordinance 91–95. Ordinance 91–95 became codified as ROH Chapter 38. ROH Chapter 38 enabled lessees ... "to purchase the leased fee interest in their condominiums[.]" ROH § 38–2.5(a) . . . .

. . . .

In 1994, the [Lessees] began the ROH Chapter 38 process to purchase the Leased Fee Interest. The [Fee Owners] vigorously objected to the process at every step and, as a result, the City and County of Honolulu [ ] did not move forward with the condemnation action. At the suggestion of the City's Corporation Counsel, the [Fee Owners] and the [Lessees] agreed to apply to the circuit court for expedited relief.

*Kau I*, at 491–95, 92 P.3d at 1001–05, 2001 WL 1205618 (footnotes omitted) (some alterations and omissions in original and some added).

The Fee Owners filed a complaint for declaratory relief requesting a judgment determining that (1) when the Master Lease ends in 2014, the CPR will also terminate and (2) the Lessees will not acquire fee simple condominium units, even with condemnation under ROH chapter 38. *Kau I*, at 495–96, 92 P.3d at 1005–06, 2001 WL 1205618.

The Lessees answered the Fee Owners' complaint and filed a counterclaim requesting a declaratory judgment that (1) the land underlying the building at 3003 Kalakaua [hereinafter, the Property] is subject to condemnation under ROH chapter 38, (2) condemnation of the Fee Owners' leased fee interests fulfills the public purpose of ROH chapter 38, and (3) the Lessees will acquire fee simple interests in the Property as a result of the condemnation. *Id.* The City also requested a declaratory judgment that ROH chapter 38 applied to the Property and

---

4. In their Application, however, the Fee Owners state that there are 25 units in the project, not 24.

that the Lessees will acquire fee simple condominium units as a result of the condemnation. *Id.* Both Lessees and Fee Owners then filed motions for summary declaratory judgment. *Id.*

The circuit court denied the Fee Owners' motion for summary judgment, ruling that declaratory relief was inappropriate because there was no actual controversy and the Fee Owners were seeking an advisory opinion. *Kau I,* at 497, 92 P.3d at 1007, 2001 WL 1205618. The circuit court granted the Lessees' motion for partial summary declaratory judgment, ruling that condemnation fulfills the purpose of ROH chapter 38 and that, after condemnation, the Lessees would acquire the " 'leased fee interest appertaining to their condominiums, *together* with an undivided leased fee interest equal to their percentage of common interest appurtenant to the [L]essees' condominium units.' " *Id.* (Quoting the circuit court's grant of the Lessees' motion for partial summary judgment.) On August 9, 2000, the circuit court entered final judgment in favor of the Lessees and the City and against the Fee Owners. *Kau I,* at 498, 92 P.3d at 1008, 2001 WL 1205618.

The Fee Owners appealed; the ICA affirmed the circuit court's denial of the Fee Owners' motion for summary judgment but vacated the circuit court order granting Lessees' motion for partial summary judgment and the August 9, 2000 final judgment. *Kau I,* at 498, 92 P.3d at 1008, 2001 WL 1205618. The ICA also remanded the case to the circuit court for the entry of an order granting in part and denying in part Lessees' motion for partial summary judgment and directed that the order should conclude that: (1) the probability that the CPR will terminate in 2014 does not bar application of ROH chapter 38 to the Property prior to 2014; and (2) the present record is insufficient to support a summary declaratory judgment that condemnation of the Fee Owners' leased fee interest fulfills the public purpose of ROH chapter 38. *Id.* The Fee Owners applied to this court for a writ of certiorari, which we granted.

## II.  STANDARDS OF REVIEW

### A.  *Writ of Certiorari*

■ In granting a writ of certiorari, this court reviews decisions for (1) grave errors of law or of fact, or (2) obvious inconsistencies in the decision of the ICA with that of the supreme court, federal decisions, or its own decision and the magnitude of such errors or inconsistencies dictating the need for further appeal. *See* HRS § 602–59 (1993).

*Wemple ex rel. Dang v. Dahman,* 103 Hawai'i 385, 392, 83 P.3d 100, 107 (2004).

### B.  *Equitable Relief*

■ A declaratory judgment is a form of equitable relief. *See Application of Air Terminal Services, Inc.,* 47 Haw. 499, 531, 393 P.2d 60, 78 (1964). " 'The relief granted by a court [in] equity is discretionary and will not be overturned on review unless the [circuit] court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the appellant.' " *Shanghai Inv. Co., Inc. v. Alteka Co., Ltd.,* 92 Hawai'i 482, 492, 993 P.2d 516, 526 (2000) (quoting *Aickin v. Ocean View Investments Co., Inc.,* 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997) (alterations in original)).

### C.  *Summary Judgment*

■ We review the circuit court's grant or denial of summary judgment *de novo. Hawaiì [sic] Community Federal Credit Union v. Keka,* 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be

viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Coon v. City and County of Honolulu,* 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002) (second alteration in original).

### D. *Statutory Interpretation*

■■■ We review the circuit court's interpretation of a statute *de novo.* ... [W]hen interpreting a municipal ordinance, we apply the same rules of construction that we apply to statutes. The interpretation of a statute is a question of law reviewable *de novo.* The purpose of the ordinance may be obtained primarily from the language of the ordinance itself; however, in order to construe the ordinance in a manner consistent with its purpose, the language must be read in the context of the entire ordinance.

*Id.* at 245, 47 P.3d at 360 (internal citations omitted).

### III. *DISCUSSION*

#### A. *Declaratory Judgment*

■■■ The circuit court ruled that there was no actual controversy concerning the expiration of the CPR and Master Lease and that the Fee Owners were requesting an advisory opinion because determining what may occur in 2014 required speculation. The ICA concluded that the circuit court was correct because the ruling that the Fee Owners requested would have required a "specu-

lative assumption that nothing will change between now and then." *Kau I,* at 499, 92 P.3d at 1009, 2001 WL 1205618.

The Fee Owners argue that the ICA gravely erred when it affirmed the circuit court's ruling that a declaratory judgment was inappropriate. Specifically, they argue that: (1) declaratory judgments are appropriate to determine contractual rights and obligations; (2) no speculation was required because the Fee Owners sought a declaratory judgment based solely on existing documents; (3) the only possible changes would require the fee owners to submit their fee simple interest to the CPR, something that the Fee Owners have no intention of doing; (4) the ICA's decision was inconsistent because it concluded that determining whether the CPR would end required speculation but remanded the case to the circuit court to determine whether condemnation would result in fee simple apartments, a determination that required speculation; and (5) the ICA did not follow the liberal standard for the administration of declaratory relief.

■■■ While the Fee Owners are correct in their contention that declaratory judgments are appropriate to determine contractual rights and obligations, the ICA's conclusion that there was no actual controversy as required by HRS § 632–1 (1993)[5] was also correct. The Fee Owners requested a declaratory judgment "with respect to the effect which the expiration of the Master Lease will have on the CPR affecting the leasehold estate in the Subject Property." HRS § 632–1 provides that the court may grant declaratory relief where there is an actual controversy between contending parties.[6] In

---

5. HRS 632–1 entitled "Jurisdiction; controversies subject to," provides in pertinent part: "Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties...."

6. Pursuant to HRS § 632–1, the circuit court can grant declaratory relief under two other circumstances:

[(1)] where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or [(2)] where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the

party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding.

We, however, do not have to reach the issue of whether these other circumstances apply in this case. "Legal issues not raised in the trial court are ordinarily deemed waived on appeal." *Association of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd.,* 100 Hawai'i 97, 107, 58 P.3d 608, 618 (2002). In their complaint for

the present case, there is no actual controversy because the Fee Owners are requesting a judgment based on the expiration of the Master Lease, an event that will occur at some time in the future; there is no actual controversy in existence at this time. Therefore, the relief that the Fee Owners requested was properly denied pursuant to HRS § 632–1.

A determination of the effect of the expiration of the Master Lease in 2014 also required speculation on the part of the circuit court; it would have to assume that circumstances would be the same in 2014. The Fee Owners argue that the only possible changes require the Fee Owners to submit their fee simple interest to the CPR, which they have no intention of doing. We disagree. The Fee Owners' present intention does not prevent them from changing their position prior to 2014; moreover, the City could condemn the Fee Owners' interest, a change that would not require the Fee Owner's consent and would render the Fee Owners' declaratory judgment request moot.

Thus, the ICA correctly affirmed the circuit court's denial of the Fee Owners' request for declaratory relief because the statutory requisite of an "actual controversy" did not exist between the parties.

## B. *Applicability of ROH Chapter 38*

██ The Fee Owners argue that ROH chapter 38 does not apply to them because the Ordinance only applies to CPRs to which the fee simple interest in land has been submitted.

The circuit court ruled that the Fee Owners' leased fee interests were subject to condemnation because ROH chapter 38 "applied 'to all lands ... on which are situated [ ] residential condominium property regime projects created under HRS Chapter 514A'.... R.O.H. § 38–1.3." The ICA concluded that the Ordinance authorized condemnation of residential condominium land so long as no less than 50% of the condominium unit owners applied to the City for condemnation. *Kau I*, at 498, 92 P.3d at 1008,

2001 WL 1205618. The ICA further concluded that the land condemned must be residential condominium land at the time of acquisition, but that HRS § 514A–21 does not require the development to maintain such status after condemnation occurs. *Kau I*, 499–500, n. 9, 92 P.3d at 1009–1010, n. 9, 2001 WL 1205618.

We disagree with the Fee Owners' argument that ROH chapter 38 is inapplicable to them because the Ordinance only applies to projects whose declaration includes the fee simple interest in the land. The Property is subject to condemnation under ROH chapter 38 for three reasons. First, the plain language of the Ordinance supports the application of ROH chapter 38 to the Property. Second, the Fee Owners' argument that "land" refers to the fee interest in the land is not supported in the applicable ordinance. Third, the public purpose requirement underlying ROH chapter 38 condemnation is satisfied as a matter of law.

### 1. The plain language of the Ordinance supports the application of ROH chapter 38 to the Property.

This court has stated that

[o]ur statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....

*Coon* at 245, 47 P.3d at 360.

Three articles in ROH chapter 38 are applicable in the present case: article 1, entitled "General Provisions;" article 2, entitled "Condemnation of Condominium Development Leaseholds;" and article 5, entitled

---

declaratory relief the Fee Owners claim only that there was a case of actual controversy; they did not argue that the other two circumstances were

applicable in this case. Therefore, we need not consider whether the other two circumstances are applicable.

"Eminent Domain." The Property is subject to condemnation under all three articles.

Article 1, § 38–1.3 provides that chapter 38 applies to "all lands[ ] in the City and County of Honolulu on which are situated [ ] residential condominium property regime projects created under HRS Chapter 514A...." The Property meets all of these requirements: it is within the City and County of Honolulu, it is residential,[7] and it was created under HRS chapter 514A.[8]

Article 2, § 38–2.1 provides that CPR condemnation applies to developments that, at the time of acquisition by the City, are developed into CPRs or "occupied by residential lessees under leases of condominium conveyance documents executed before the effective date of this chapter." The present Property meets both of these requirements. The effective date of chapter 38 is January 1, 1992 (Ord.91–95), and the conveyance documents were executed before that date, so the Property is presently subject to condemnation.

Article 5, § 38–5.1 provides that eminent domain applies to "developments which are

created by condominium property regimes under HRS Chapter 514A...." The Property meets this requirement. *See supra* note 8. Thus, the Property is subject to condemnation under ROH chapter 38 under the plain language of the Ordinance.

## 2. ROH §§ 38–2.1 and 38–1.2 support application of the Ordinance to the Property.

The Fee Owners argue that the ICA gravely erred because it did not read ROH §§ 38–1.2[9] and 2.1[10] within the context of the entire Ordinance; they contend that, when read in context, condemnation is appropriate only if the fee simple interest in the land was submitted to the CPR. The basis of the Fee Owners' argument is that the term "land," as used in ROH chapter 38, refers to the fee simple interest in the land. This argument, however, is not supported by the Ordinance. A plain reading of ROH § 38–2.1 does not lend support to the Fee Owners' argument. This section does not contain the word "land" and does not make a distinction between fee simple or leasehold property.

7. All parties agreed that the Property contains residential apartment units.

8. The CPR in question was established pursuant to Act 180, 1961 Haw.Sess.L., as amended. *Kau I*, at 491–92, 92 P.3d at 1001–02, 2001 WL 1205618. Act 180 (in its present amended form) exists as HRS chapter 514A; therefore, the CPR was created under HRS chapter 514A. (In 1961, Act 180 was codified as Revised Laws of Hawai'i (RLH) chapter 170A. *Compare* RLH chapter 170A (1961) (codifying Act 180) *with* RLH Tables of Disposition, Table IX, p. 787 (1961). In 1968, the legislature redesignated RLH chapter 170A as HRS chapter 514. *Compare* 1968 Haw. Sess.L. Act 16 (the legislature repealed the RLH and enacted as law a four-volume manuscript which the legislature designated as the HRS), *with* HRS 1988 Special Pamphlet, Tables of Disposition, Table 1, p. 15–16. In 1977, HRS chapter 514 was restated as HRS chapter 514A. *Cf.* 1977 Haw.Sess.L. Act 98, at 162–181.)

9. ROH § 38–1.2, entitled "Definitions," provides in pertinent part:

"Condominium" means a residential apartment, together with an appurtenant undivided interest in common elements, located on *land subject to a declaration of condominium property regime* as defined in HRS Chapter 514A....
....

"Development" means the area of *land*, irrespective of size, which:

(1) Is *subject to a declaration of condominium property regime* pursuant to HRS Chapter 514A, which condominium property regime contains or is intended to contain condominium apartment units occupied or to be occupied under apartment lease or condominium conveyance documents ...

....
To qualify as a development, there shall be 10 or more residential condominium apartment units ... on the land.
(Emphasis added.)

10. ROH § 38–2.1, entitled "Applicability," provides:

This article applies to developments which, at the time of acquisition of the development by the city, are:

(a) Developed into condominium property regimes or occupied by residential lessees under leases of condominium conveyance documents executed before the effective date of this chapter; or

(b) Developed or partially developed into condominium property regimes occupied or to be occupied by residential leases under apartment leases or condominium conveyance documents executed on or after the effective date of this chapter; provided, that 90 percent of the leases to units in the condominium have been executed.

The only requirement in ROH § 38–2.1 is that the CPR be developed or partially developed at the time the City acquires it through condemnation. Because the Property is presently held as a CPR, it is subject to condemnation under ROH chapter 38.

Furthermore, the Ordinance does not provide a definition of the term "land"; rather, the Ordinance uses the term "interest" when referring specifically to an *interest* in the land as opposed to the *physical attributes* of the land.[11] Therefore, the Fee Owners' argument that the word "land" is synonymous with the fee simple interest in the land is not supported by the plain language of the Ordinance. Thus, ROH chapter 38 applies to all land submitted to a CPR, regardless of the type of interest in the land submitted (whether fee simple or leasehold).

### 3. The public purpose requirement underlying ROH chapter 38 condemnation is satisfied as a matter of law.

The Fee Owners argue that, even if ROH chapter 38 is otherwise applicable to them, condemnation of the Property will not satisfy the public purpose requirement underlying ROH chapter 28 because the Lessees would be tenants in common upon expiration of the Master Lease rather than fee simple condominium unit owners as envisioned in ROH chapter 38. We disagree and hold that the public purpose requirement underlying ROH chapter 38 condemnation is satisfied as a matter as law, as will now be discussed.

#### a. *History of ROH chapter 38*

ROH chapter 38 (entitled "Residential Condominium, Cooperative Housing and Residential Planned Development Leasehold Conversions"), enacted by City and County of Honolulu Ordinance 91–95 (1995), is modeled after HRS chapter 516 (known as the Hawai'i Land Reform Act (HLRA)). *Richardson v. City and County of Honolulu*, 802 F.Supp. 326, 340 (D.Haw.1992); *see generally, Richardson v. City and County of Honolulu*, 76 Hawai'i 46, 868 P.2d 1193 (1994) (outlining Hawai'i's involuntary fee conversion scheme under state statute and county ordinance and stating that both HRS chapter 516 (HLRA) and ordinance 91–95 (presently codified as ROH chapter 38) appertain to involuntary fee conversion; however, the statute and ordinance cover different subject matter—the HLRA applies to land underlying single family homes and ROH chapter 38 applies to condominium, cooperative housing and planned development units.) The intended similarity between ROH chapter 38 and the HLRA is evident in the City Council's statement regarding the purpose of the Ordinance: "[t]he purpose of this measure is to provide to the leasehold owners of condominium properties the same right to purchase the land under their homes as is currently provided the owners of single family dwellings...." *See Coon*, 98 Hawai'i at 251 n. 27, 47 P.3d at 366 n. 27 (citing the report of the City Council Committee on Housing, Committee Report No. 545 (1991)).

In enacting ROH chapter 38, the City Council determined that there was a serious shortage of fee simple residential condominium land, which resulted in artificial inflation in the value of such land on O'ahu and increasing lease rents, with many owner-occupants of leasehold residential condominium units unable to afford to continue living in their homes. *Id.* at 249, 47 P.3d at 364; *see also Hous. Fin. and Dev. Corp. v. Castle*, 79

---

11. "The purpose of this chapter is to establish the right of any person, who is a lessee under any long-term lease of land upon which is situated [ ] residential condominium property regime projects ... to purchase at a fair and reasonable price the *fee simple title to such land*." ROH § 38–1.1 (emphasis added). " 'Fair market value' means that amount of money that a purchaser willing, but not obligated, to buy *land or an interest in land* would pay to an owner willing, but not obligated to sell the *land or interest in land* in an open market, taking into consideration all uses to which the land is adapted or might in reason be applied." ROH § 38–1.2 (emphases added). " 'Fee owner' means the person who owns the *fee simple title* to the land...." ROH § 38–1.2 (emphasis added). " 'Lease' means the conveyance of *land or an interest in land* by a fee simple owner...." ROH § 38–1.2 (emphasis added). "[T]he department may designate all or that portion of a development containing residential condominium *land for acquisition*, and facilitate the *acquisition of the applicable leased fee interests in that land* ...." ROH § 38–2.2 (emphases added). "A person is deemed to own lands ... if the person ... own *lands, including any interest* ...." ROH § 38–2.4 (emphasis added).

Hawai'i 64, 898 P.2d 576 (1995) [hereinafter, *HFDC*] (providing a detailed explication of the public purpose underlying the HLRA). In order to alleviate these perceived undesirable economic and social conditions, the City Council deemed it necessary to enact ROH chapter 38 to provide a right to leasehold owners of residential condominium units to purchase at a fair and reasonable price a proportionate share of the fee simple title to the land upon which their condominium units are situated. *Coon,* 98 Hawai'i at 249, 47 P.3d at 364.

Consistent with the stated purpose of ROH chapter 38, the threshold requirement and mechanism for the conversion of condominium owners' leased fee interests into fee simple interests are similar to those of the HLRA. *Id.* at 251 n. 27, 47 P.3d at 366 n. 27.

b. *ROH chapter 38 fulfills a public purpose and is constitutional*

In *Richardson v. City and County of Honolulu,* 124 F.3d 1150 (1997), the United States Court of Appeals for the Ninth Circuit held that Ordinance 91–95 (codified as ROH chapter 38) is constitutional: "[i]n summary, we hold that Ordinance 91–95 (the lease to fee ordinance) is constitutional. The Ordinance admittedly takes private property, but it does so for a sufficiently public purpose and no constitutional deprivation has as yet been established." *Richardson,* 124 F.3d at 1166.

Similarly, we previously held in *HFDC* that the HLRA accomplished a public purpose within the meaning of the HLRA and the United States and Hawai'i Constitutions. *HFDC,* 79 Hawai'i at 90, 898 P.2d at 602. After reviewing the public purpose elucidated in the express language of the HLRA, its legislative history, and earlier case law, we held that the HLRA continues to accomplish a public purpose within the meaning of the HLRA and the United State and Hawai'i Constitutions. *Id.* at 91–92, 898 P.2d at 603–04. In reaching this conclusion, we discussed the legislative findings and stated purpose of the HLRA and held as follows:

> We therefore hold that once the legislature has spoken on the social issue involved, so long as the exercise of the emi-
> nent domain power is rationally related to the objective sought, the legislative public use declaration should be upheld unless it is palpably without reasonable foundation. The crucial inquiry is whether the legislature might reasonably ... have believed that application of the sovereign's condemnation powers would accomplish the public use goal.
>
> The [Hawai'i] Legislature, in comprehensive findings, determined that skewed patterns of land ownership have interfered with the normal functioning of the state's residential land market and declared that condemnation of certain concentrated private property interests would serve a public use by correcting the perceived social and economic evils of a land oligopoly. Clearly, the legislature reasonably could have believed that condemnation and resale of the fee interest in leasehold land would promote the objectives of increasing the availability of residential property, realigning the residential fee simple market, reducing land prices, and would beneficially impact the state economy and general public welfare.
>
> These are legitimate public purposes. The employment of the state's eminent domain authority to redistribute fees simple to correct socio-economic problems attributed by the legislature to a land oligopoly is a rational means to accomplish these ends.

*Id.* at 85, 898 P.2d at 597 (alteration in original).

c. The DCS's determination that the acquisition of the Fee Owners' leased fee interests, using the City's power of eminent domain, would effectuate the public purpose of ROH chapter 38, as stated by the City Council in its enactment, satisfies the public purpose requirement underlying ROH chapter 38 condemnation as a matter of law.

The Fee Owners contend that condemnation would not in fact accomplish the City Council's articulated public purpose of fee simple condominium ownership because, according to the Fee Owners, the Lessees will

be tenants in common upon expiration of the Master Lease in 2014. We need not decide now what the legal ownership status of the parties will be upon expiration of the Master Lease, a contingent event; whatever their status may be upon the occurrence of a contingent event is not determinative of whether the Lessees have satisfied the public purpose requirement underlying ROH chapter 38. We previously decided this issue in *HFDC*, where the fee owners proposed that "public purpose" determinations be made on a case-by-case basis as a function of the particular "time" and general economic "circumstances" at the time of condemnation. *Id.* at 87, 898 P.2d at 599. We held that the fee owners in that case were mistaken and that the public purpose requirement of the HLRA would be satisfied as a matter of law by the lessees' compliance with its threshold requirements of the number and qualifications of applying lessees and the condemning authority's determination that its acquisition will effectuate the public purpose of the HLRA:

> Put more succinctly, pursuant to HRS § 516–22, the HFDC's sole function is to determine that the necessary *quantum* of lessees have *applied* for purchase of their leased fee interests in residential lots situated in a qualifying "development tract," *see* HRS § 516–1, *supra* note 1, in conformity with the preconditions enumerated in HRS § 516–33, and that the acquisition *by the HFDC* will *effectuate* the public purposes of the HLRA.
>
> . . . .
>
> These determinations of the number and qualifications of applying lessees and the "effectuation" of the public purposes of the HLRA—which are all that are required of the HFDC by HRS § 516–22—are a far cry from a reexamination of the question whether any given acquisition would *in fact* accomplish the legislature's articulated public purposes, a feat that the United States Supreme Court ruled that even the legislature was not required to accomplish in the first instance. [*Hawai'i Housing Authority v.*] *Midkiff*, 467 U.S. [229] at 242, 104 S.Ct. [2321] at 2330 [81 L.Ed.2d 186 (1984)].

*Id.* at 88–89, 898 P.2d at 600–01.

In this case, the Fee Owners have not challenged the DCS's findings that the requi-

site number of applications were received from qualified owner occupants and that the public hearing was properly noticed and held. Their sole challenge is to the DCS's finding that acquisition of the leased fee interest in the Property using the power of eminent domain of the City will effectuate the public purpose of ROH chapter 38 as stated by the City Council in Ordinance 91–95.

Considering both the history of ROH chapter 38 and its close relationship with the HLRA and our holding in *HFDC*, we have no difficulty in holding that the public purpose requirement underlying ROH chapter 38 condemnation has been satisfied as a matter of law in this case.

The bottom line is that the ICA did not gravely err when it concluded that the Property was subject to condemnation under ROH chapter 38.

### C. *ICA Remand to Circuit Court*

The ICA concluded that the present record was "insufficient to support a summary declaratory judgment that condemnation of the [Fee Owners'] leased fee interests in the Property fulfills the public purpose of ROH Chapter 38." *Kau I*, at 498, 92 P.3d at 1008, 2001 WL 1205618.

■ The Fee Owners argue that the ICA gravely erred when it remanded the case to the circuit court for the determination of this issue because whether condemnation of the Fee Owners' interest fulfills the requisite public purpose of ROH chapter 38 is a question of law.

We agree with the Fee Owners on this point; this issue presents a question of law. As such, this issue should be decided by this court inasmuch as there are no factual questions. *See Gregg Kendall & Associates, Inc. v. Kauhi*, 53 Haw. 88, 94, 488 P.2d 136, 141 (1971) (stating that in the "furtherance of justice" the court should determine issues of law without remand if there are no factual issues that must be resolved).

For the reasons discussed in the preceding section, we hold that the public purpose re-

quirement underlying ROH chapter 38 condemnation has been satisfied as a matter of law.

We consequently hold that the ICA gravely erred when it found that the record was insufficient to support a summary declaratory judgment that condemnation of the Fee Owners' leased fee interest fulfills the public purpose of ROH chapter 38 and remanded the case to the circuit court for determination of that issue.

## IV. *CONCLUSION*

Based on the foregoing, we affirm the ICA's opinion insofar as it concluded that the declaratory relief sought by the Fee Owners was inappropriate and that ROH chapter 38 is applicable to the Property. However, we vacate the ICA's opinion insofar as it concluded that the record was insufficient to determine whether condemnation would fulfill the public purpose of ROH chapter 38 and hold that condemnation of the Property will fulfill the public purpose of ROH chapter 38.